## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## AIKEN DIVISION

| | |
|---|---|
| RAMON CARRILLO,<br><br>Plaintiff,<br><br>v.<br><br>EQUIFAX INFORMATION SERVICES, LLC, and EXPERIAN INFORMATION SOLUTIONS, INC.,<br><br>Defendants. | **Case No.:** 1:25-cv-13994-SAL<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>1. **FCRA, 15 U.S.C. § 1681 *et seq.*** |

Plaintiff RAMON CARRILLO, ("Plaintiff") through counsel, alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* against Defendant Equifax Information Services, LLC and Defendant Experian Information Solutions, Inc. (collectively, "Defendants").

## INTRODUCTION

1.     Plaintiff's Complaint arises from violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* by Defendants.

2.     Plaintiff contends Defendants failed to maintain reasonable procedures to ensure maximum possible accuracy in the preparation of Plaintiff's consumer reports.

3.     "Consumer reports" under 15 U.S.C. § 1681a(d) include both credit file disclosures obtained directly by Plaintiff from the consumer reporting agencies and consumer reports obtained by third parties as a factor in establishing Plaintiff's eligibility for credit.

## JURISDICTION AND VENUE

1

4.      This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 because

Plaintiff alleges violations of the FCRA, a federal law. *See* 15 U.S.C. § 1681p (FCRA)

(permitting actions to enforce liability in an appropriate United States District Court).

5.      Venue in the District of South Carolina is proper pursuant to 28 U.S.C. § 1391

because Defendant regularly transacts business within this District or is otherwise subject to

personal jurisdiction in this District, and a substantial part of the events giving rise to

Plaintiff's claims occurred in this District.

## PARTIES

6.      Plaintiff is a natural person who resides in Barnwell, South Carolina.

7.      Plaintiff is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

8.      Defendant Equifax is one of the largest credit reporting agencies in the United

States and is engaged in the business of assembling and disseminating credit reports

concerning hundreds of millions of consumers.  Equifax is a "consumer reporting agency" as

defined in 15 U.S.C. § 1681a(f) of the FCRA, and is regularly engaged in the business of

assembling, evaluating, and disseminating information concerning consumers for the purpose

of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d)(1) of the FCRA, to third

parties.

9.      Equifax's principal place of business is located at 1550 Peachtree Street, N.W.,

Atlanta, GA 30309.

10.     Defendant Experian Information Solutions, Inc. ("Experian") is one of the

largest credit reporting agencies in the United States and is engaged in the business of

assembling and disseminating credit reports concerning hundreds of millions of consumers.

Experian is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f) of the FCRA, and is regularly engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d)(1) of the FCRA, to third parties.

11.     Experian is a corporation with its headquarters located in Costa Mesa, California.

12.     During all times pertinent to this Complaint, Defendants were authorized to conduct business in the State of South Carolina and conducted business in the State of South Carolina on a routine and systematic basis.

13.     During all times pertinent to this Complaint, Defendants acted through authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

14.     Any violations by Defendants were not in good faith, were knowing, negligent, willful, and/or intentional.

## FACTUAL BACKGROUND

15.     The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate consumer reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

16.     Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

17.    The FCRA is intended to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

18.    Experian and Equifax, two of the three major consumer reporting agencies (at times referred to collectively as "CRAs" and individually as a "CRA") in the United States, regularly publishes and distributes credit information about Plaintiff and other consumers through the sale of consumer reports.

19.    Defendants regularly obtain consumer bankruptcy information to include in consumer reports.

20.    Defendants regularly seek out and procure public record information, including consumer bankruptcy filing and discharge information, with the intention of including this bankruptcy information on the consumer reports they sell to third parties such as lenders.

21.    The diligence Defendants exercise in uncovering and recording consumer bankruptcy filings is not replicated in their subsequent reporting of bankruptcy discharges and their effect on consumers' debts.

22.    Defendants' unreasonable policies, procedures and/or algorithms consistently fail to identify and update pre-bankruptcy debts as required by § 1681e(b).

23.    Defendants know, or should have known, the information they report about consumers' bankruptcies is often inconsistent with public records, furnished/reported information, and/or information contained in its own files.

24.     The majority of institutions that offer financial services (e.g., banks, creditors, lenders) rely upon consumer reports from CRAs (like Equifax and Experian) to make lending decisions.

25.     A consumer who has obtained a bankruptcy discharge and has an account reporting with outstanding or past due balances after the bankruptcy discharge suffers greater harm than if that account were accurately reporting with a zero-dollar balance.

26.     Despite the availability of accurate consumer information, Defendants regularly report inaccurate information about accounts after consumers receive a Discharge Order.

27.     Defendants regularly publish consumer information that conflicts with information: provided by data furnishers to Defendants, already included in their credit files, contained in public records that they regularly access, or sourced through their independent and voluntary efforts.

28.     Defendants also know that failing to report the effect of a discharge on consumer account tradelines, while reflecting a bankruptcy on a credit report, would reasonably be understood to communicate to the world that the consumer had been in bankruptcy but had not received a discharge of a particular account. This not only inaccurately/incorrectly reflects an outstanding debt, but also would reasonably suggest to a consumer and those reviewing the consumer's credit report that the consumer was guilty of a bad act for which he or she did not deserve a discharge of a particular debt.[1]

_____

[1] Indeed, a bankruptcy discharge is for the "honest but unfortunate debtor," *Grogan v. Garner*, 498 U.S. 279, 287 (1991), and will not be provided to someone who filed bankruptcy in bad faith, failed to report assets, fraudulently transferred assets, engaged in reprehensible pre-bankruptcy conduct

29.     Consumers have filed countless lawsuits and complaints with the FTC and Consumer Financial Protection Bureau against Defendants for their inaccurate credit reporting following a Chapter 7 discharge.

30.     Thus, Defendants have been on continued notice of their inadequate post-bankruptcy reporting procedures. More specifically, Defendants are on continued notice that their inadequate procedures regularly result in the reporting of inaccurate balances, account statuses, payment histories, and payment statuses.

*Allegations Specific to Credit Reporting of Plaintiff*

31.     Plaintiff filed a Chapter 7 Bankruptcy on or about September 22, 2022, in the United States Bankruptcy Court in the District of South Carolina.

32.     Plaintiff received an Order of Discharge on or about December 21, 2022.

33.     Thereafter, Plaintiff was not personally liable for any of his dischargeable debts. Upon entry of Plaintiff's Discharge Order, all of Plaintiff's dischargeable debts had zero-dollar balances.

34.     Defendants prepared one or more consumer reports concerning Plaintiff after Plaintiff was discharged from Chapter 7 Bankruptcy.

35.     Defendants obtained notice of Plaintiff's bankruptcy discharge through their routine, independent collection of consumer information from third party vendors such as Lexis-Nexis, as well as from furnishers that provide data regarding the individual tradelines reported by the CRAs in Plaintiff's consumer reports.

---

such as fraud, defalcation or embezzlement, or caused willful and malicious injury. 11 U.S.C. §§ 727(a), 523(a).

36.    Defendants are aware that they are generally required to report accounts included in a consumer's Chapter 7 bankruptcy with a status of "discharged through bankruptcy," and/or with a zero-dollar balance, unless a furnisher provides information showing that a specific debt was excluded from the discharge.

37.    Defendants should have reported **all** of Plaintiff's dischargeable, pre-petition debts as included in or discharged in Chapter 7 Bankruptcy, and/or with a zero-dollar balance.

38.    Defendants failed to report **all** of Plaintiff's dischargeable, pre-petition debts as included in or discharged in Chapter 7 bankruptcy with a zero-dollar balance.

39.    Specifically, Equifax inaccurately reports the following accounts on Plaintiff's credit report:

- Upgrade Account (opened in June of 2021, pre-bankruptcy) reported as "Included in Bankruptcy," but also reporting late payments allegedly occurring after the December 2022 discharge date;

- Mercury/FB&T Account (opened in June of 2021, pre-bankruptcy) reported with a status of "CHARGE OFF" and an outstanding balance of $1,667.

40.    Similarly, Experian is inaccurately reporting the following accounts on Plaintiff's credit report:

- Mercury/FB&T Account (opened in June of 2021, pre-bankruptcy) reported with a status of "CHARGE OFF" and an outstanding balance of $1,667.

41.    Despite reporting Plaintiff's bankruptcy in the Public Records section of his consumer reports, neither Defendant reported the aforementioned accounts as discharged in bankruptcy or reflected a zero-dollar balance. This contrasts with other prebankruptcy

accounts, which were accurately reported as "Discharged/Included in Bankruptcy Chapter 7" and with zero-dollar balances, highlighting the inconsistent and inaccurate reporting of Plaintiff's credit information.

42.    Defendants knew or should have known that Plaintiff's debts were fully discharged in bankruptcy, including the aforementioned accounts.

43.    Defendants reported debts that were in fact discharged in bankruptcy and were therefore required to report these as discharged and/or with a zero balance.

### *Plaintiff's Damages*

44.    Upon information and belief, had Defendants accurately reported the discharged accounts with a zero balance and a status of "discharged" or "included" in bankruptcy, Plaintiff's credit scores and/or debt-to-income ("DTI") ratio would have been better, thereby improving Plaintiff's credit worthiness.

45.    The false increased debt due to Equifax's inaccurate reporting also negatively impacts the 30% of credit score which is based on the debt owed divided by credit limits, which impacts post-discharge consumers even more than those who have not filed bankruptcy.

46.    As a direct and proximate result of Defendants' inaccurate reporting, Plaintiff suffers damages, including a decreased credit score, lower overall creditworthiness, credit denials, the dissemination of false information about him, and other financial harm.

47.    Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, loss of sleep,

humiliation, stress, anger, frustration, shock, embarrassment, reputational harm, violation of privacy, and anxiety.

48.     Defendants' conduct exacerbated Plaintiff's frustration during the already stressful post-bankruptcy period by hindering Plaintiff's ability to rebuild Plaintiff's credit.

## COUNT I
### AGAINST EQUIFAX
### Violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681e(b)

49.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth herein at length.

50.     The FCRA requires CRAs to maintain and follow reasonable procedures to assure maximum possible accuracy of consumer information. 15 U.S.C. § 1681e(b).

51.     In this case, Equifax negligently and willfully violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of Plaintiff's credit information after Plaintiff received a Discharge Order.

52.     Equifax independently sought information about Plaintiff's bankruptcy filing and discharge and voluntarily reported it in Plaintiff's consumer reports.

53.     When Equifax procured and published Plaintiff's bankruptcy information, it had an obligation to ensure it followed reasonable procedures to report the bankruptcy discharge and its effect(s) with maximal accuracy.

54.     These obligations are well established by the plain language of the FCRA, promulgated by the Federal Trade Commission, supported in case law, and evidenced in prior

cases involving Equifax from which it is on notice of its unreasonable procedures concerning the reporting of discharged debts.

55.     Defendant Equifax knew or should have known that the effect of a Discharge Order in a no asset Chapter 7 Bankruptcy is to discharge all statutorily dischargeable debts other than those that have been reaffirmed in a reaffirmation agreement or successfully challenged in an adversary proceeding.

56.     Defendant Equifax knew or should have known of its obligations under the FCRA, especially pertaining to reporting discharged debt with a zero-dollar balance.

57.     Additionally, Equifax possesses or could easily obtain substantial written materials that detail its duties and obligations under the FCRA, including those that apply when a consumer files for Chapter 7 Bankruptcy.

58.     Defendant Equifax knows that discharged debts should not be reported as late, past due, or with outstanding balances after the discharge date, and should be reported with a zero-dollar balance.

59.     Yet Equifax inaccurately reported Plaintiff's Upgrade and Mercury/FB&T accounts, which predated Plaintiff's Chapter 7 Bankruptcy, with a status other than "discharged in bankruptcy" and a balance greater than zero.

60.     Despite knowledge of these legal obligations, Equifax willfully and consciously breached its duties under the FCRA.

61.     Accordingly, Equifax deprived Plaintiff of Plaintiff's rights under the FCRA.

62.     Equifax had actual knowledge of Plaintiff's bankruptcy and Discharge Order, as evidenced by the information it published in Plaintiff's consumer reports, including the bankruptcy case number, court, date of filing and date of discharge.

63.     Individual furnishers of account information also notified Equifax of Plaintiff's bankruptcy, as evidenced by tradelines in Plaintiff's consumer reports that are labeled discharged in bankruptcy" with zero-dollar balances.

64.     Defendant Equifax thus violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information included in Plaintiff's credit file and consumer reports, and by also failing to report accurate information when it knew or should have known the information it was reporting was inaccurate, or otherwise contradicted by information known by Equifax, reported to Equifax, or reasonably available to Equifax.

## COUNT II
### AGAINST EXPERIAN
**Violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681e(b)**

65. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth herein at length.

66.     The FCRA requires CRAs to maintain and follow reasonable procedures to assure maximum possible accuracy of consumer information. 15 U.S.C. § 1681e(b).

67.     In this case, Experian negligently and willfully violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of Plaintiff's credit information after Plaintiff received a Discharge Order.

11

68.     Experian independently sought information about Plaintiff's bankruptcy filing and discharge and voluntarily reported it in Plaintiff's consumer reports.

69.     When Experian procured and published Plaintiff's bankruptcy information, it had an obligation to ensure it followed reasonable procedures to report the bankruptcy discharge and its effect(s) with maximal accuracy.

70.     These obligations are well established by the plain language of the FCRA, promulgated by the Federal Trade Commission, supported in case law, and evidenced in prior cases involving Experian from which it is on notice of its unreasonable procedures concerning the reporting of discharged debts.

71.     Defendant Experian knew or should have known that the effect of a Discharge Order in a no asset Chapter 7 Bankruptcy is to discharge all statutorily dischargeable debts other than those that have been reaffirmed in a reaffirmation agreement or successfully challenged in an adversary proceeding.

72.     Defendant Experian knew or should have known of its obligations under the FCRA, especially pertaining to reporting discharged debt with a zero-dollar balance.

73.     Additionally, Experian possesses or could easily obtain substantial written materials that detail its duties and obligations under the FCRA, including those that apply when a consumer files for Chapter 7 Bankruptcy.

74.     Defendant Experian knows that discharged debts should not be reported as late, past due, or with outstanding balances after the discharge date, and should be reported with a zero-dollar balance.

75.    Yet Experian inaccurately reported Plaintiff's Mercury/FB&T account, which predated Plaintiff's Chapter 7 Bankruptcy, with a status other than "discharged in bankruptcy" and a balance greater than zero.

76.    Despite knowledge of these legal obligations, Experian willfully and consciously breached its duties under the FCRA.

77.    Accordingly, Experian deprived Plaintiff of Plaintiff's rights under the FCRA.

78.    Experian had actual knowledge, or at minimum constructive knowledge, of Plaintiff's bankruptcy and Discharge Order because such information was reasonably available through the same sources Experian routinely relies upon for bankruptcy data.

79.    Defendant Experian thus violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information included in Plaintiff's credit file and consumer reports, and by also failing to report accurate information when it knew or should have known the information it was reporting was inaccurate, or otherwise contradicted by information known by Experian, reported to Experian, or reasonably available to Experian.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgments against Defendants for the following:

(a)    Declaratory judgment that Defendants violated the FCRA, 15 U.S.C. § 1681e(b);

(b)    An award of actual damages pursuant to 15 U.S.C. §§ 1681n(a)(1) or 1681o(a)(1);

(c)    An award of statutory damages pursuant to 15 U.S.C. §§ 1681n(a)(1) and

1681o(a)(1);

(d)    An award of punitive damages, as allowed by the Court pursuant to 15 U.S.C.

§ 1681n(a)(2),

(e)    Costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3) and §

1681o(a)(2); and

(f)    Such other and further relief as this Honorable Court may deem just and proper,

including any applicable pre-judgment and post-judgment interest, and/or

declaratory relief.

## **<u>JURY DEMAND</u>**

Plaintiff hereby demands a jury trial on all issues so triable.

Dated: December 22, 2025

/s/ Spencer Andrew Syrett
Spencer Andrew Syrett, Esq.
Federal Bar ID # 4408
SC Bar ID # 5459
712 Richland Street, Suite E
Columbia, SC 29201
Tel: (803) 765-2110
Email: syrettlaw@sc.rr.com
*Counsel for Plaintiff*
